UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WILLIAM BOKERMAN,

       Petitioner,

v.                          Case No:  2:15-cv-69-FtM-29CM
                                   Case No. 2:11-CR-112-FTM-29SPC

UNITED STATES OF AMERICA,

       Respondent.

_____

## OPINION AND ORDER

This matter comes before the Court on petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #90)[1] filed on February 5, 2015.  The government filed a Response in Opposition to Motion (Cv. Doc. #5) on April 7, 2015. The petitioner filed a Reply (Cv. Doc. #7) on May 12, 2015.

### I.

On November 9, 2011, a federal grand jury in Fort Myers, Florida returned a three-count Indictment (Cr. Doc. #14) charging petitioner with knowingly using, persuading, enticing, or coercing a minor outside of the United States to produce a sexually explicit visual depiction, and transporting the visual depiction to the

---

[1]The Court will refer to the docket of the civil habeas case as "Cv. Doc.", and will refer to the docket of the underlying criminal case as "Cr. Doc."

United States in interstate or foreign commerce (Count One); knowingly transporting a visual depiction of a minor engaged in sexually explicit conduct in interstate or foreign commerce (Count Two); and possession of one or more visual depictions of a minor engaged in sexually explicit conduct and transported in interstate or foreign commerce (Count Three). On May 10, 2012, petitioner appeared before a magistrate judge and entered a plea of guilty to Counts Two and Three of the Indictment pursuant to a Plea Agreement. (Cr. Docs. ## 45, 49.) The guilty pleas were accepted, and petitioner was adjudicated guilty on May 14, 2012. (Cr. Doc. #51.) Count Two provides a statutory minimum of 15 years, and Count Three carries a statutory minimum of 10 years.

At sentencing, on November 13, 2012, the Court found that the government failed to show by a preponderance of the evidence that petitioner was a parent, relative, or legal guardian, and that petitioner had demonstrated an acceptance of responsibility, lowering defendant's Total Offense Level to 40 from 43, which would have carried a guideline range of life imprisonment. (Cr. Doc. #75, pp. 76, 82, 84.) With a Criminal History Category II, petitioner's guideline range was 324 months to 405 months of imprisonment. The Court sentenced petitioner to a term of imprisonment of 324 months as to Count Two, and 224 months as to Count Three, to be served concurrently, followed by a term of supervised release. (Cr. Doc. #65.) Count One was dismissed upon

motion of the government.  Judgment (Cr. Doc. #67) was filed on November 15, 2012.

Petitioner filed a Notice of Appeal (Cr. Doc. #68) arguing: (1) that his plea was not knowing and voluntary because the Magistrate Judge failed to warn him of a cross-referencing guideline provision during the plea colloquy; (2) that his sentence was cruel and unusual under the Eighth Amendment of the U.S. Constitution; and (3) that his sentence was procedurally and substantively unreasonable.  United States v. Bokerman, 543 F. App'x 974 (11th Cir. 2013).  On November 7, 2013, the Eleventh Circuit affirmed in part, and dismissed the appeal in part.  (Cr. Doc. #88.)  Petitioner had one year from February 7, 2014[1], the date his convictions became final, to file his motion under §2255, and the government concedes that the February 5, 2015[2], motion was timely filed.

## II.

Petitioner raises several arguments of ineffective assistance by trial counsel related to two stages of his case:  his change of plea and sentencing.

---

[1] See Kaufmann v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002).

[2] The motion was signed and executed by petitioner on January 8, 2015, and filed by counsel on February 5, 2015.

**A. Evidentiary Hearing Standard**

A district court shall hold an evidentiary hearing on a habeas corpus petition "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). "[I]f the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." Aron v. United States, 291 F.3d 708, 714-15 (11th Cir. 2002) (citation omitted). However, a district court is not required to hold an evidentiary hearing where the petitioner's allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record. Id. at 715. See also Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (a hearing is not necessarily required whenever ineffective assistance of counsel is asserted). To establish entitlement to an evidentiary hearing, petitioner must "allege facts that would prove both that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance." Hernandez v. United States, 778 F.3d 1230, 1232-33 (11th Cir. 2015). Viewing the facts alleged in the light most favorable to petitioner, the Court finds that the record establishes that

petitioner is not entitled to relief, and therefore an evidentiary hearing is not required.

## B. Ineffective Assistance of Counsel Standard

The legal standard for ineffective assistance of counsel claims in a habeas proceeding is well established.  To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) prejudice resulted because there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different.  Hinton v. Alabama, ___ U.S. ___, 134 S. Ct. 1081, 1087-88 (2014) (citing Strickland v. Washington, 466 U.S. 668, 687, 694 (1984) and Padilla v. Kentucky, 559 U.S. 356, 366 (2010)).  "Because a petitioner's failure to show either deficient performance or prejudice is fatal to a Strickland claim, a court need not address both Strickland prongs if the petitioner fails to satisfy either of them."  Kokal v. Sec'y, Dep't of Corr., 623 F.3d 1331, 1344 (11th Cir. 2010) (citations omitted).

The proper measure of attorney performance is simply reasonableness under prevailing professional norms considering all the circumstances.  Hinton, 134 S. Ct. at 1088 (citations omitted).  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. See also Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (the Court looks to facts at the time of counsel's conduct). This judicial scrutiny is highly deferential, and the Court adheres to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action. Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011); Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010). Additionally, an attorney is not ineffective for failing to raise or preserve a meritless issue. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992); Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989).

### C. Knowing and Voluntary Guilty Plea Standard

"A guilty plea is more than a confession which admits that the accused did various acts." United States v. Broce, 488 U.S. 563, 570 (1989) (citations omitted). "By entering a plea of guilty, the accused is not simply stating that [s]he did the discrete acts described in the indictment; [s]he is admitting guilt of a substantive crime." Id. For this reason, the United States Constitution requires that a guilty plea must be voluntary, and defendant must make the related waivers knowingly, intelligently

and with sufficient awareness of the relevant circumstances and likely consequences. United States v. Ruiz, 536 U.S. 622, 629 (2002); Hill v. Lockhart, 474 U.S. 52, 56 (1985); Henderson v. Morgan, 426 U.S. 637, 645 (1976). A criminal defendant who has pled guilty may attack the voluntary and knowing character of the guilty plea, Tollett v. Henderson, 411 U.S. 258, 267 (1973); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992), or the constitutional effectiveness of the assistance she received from her attorney in deciding to plead guilty, United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986).

To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of her guilty plea. United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999). Rule 11 explicitly directs the district judge not to accept a plea without determining these "core concerns." "With respect to the Sentencing Guidelines, where the court confirms that a defendant is aware of the Guidelines and has discussed the effect of the Guidelines on his sentence with his attorney, Rule 11 compliance has occurred." United States v. Bokerman, 543 F. App'x 974, 976 (11th Cir. 2013). Relief from a Rule 11 violation is available "only in the most egregious cases." United States v. Dominguez Benitez, 124 S. Ct. 2333, 2339 (2004).

**A. Ground One: Change of Plea**

Petitioner argues that his plea was not knowing and voluntary because: (1) counsel failed to advise petitioner that his sentencing guideline range would be mandatory life based on his criminal history, or that service of a life sentence was a virtual certainty, and instead advised petitioner that he would receive the statutory minimum or less, and he would get an early release when he turned 70 years old under the Second Chance Act (petitioner was 65 years old at the time of the plea); (2) the waiver of the right to appeal subjected petitioner to a life sentence without any ability to obtain review for fundamental legal error and therefore was not knowing; (3) counsel had a financial conflict of interest in petitioner's assets by imposing a "perpetual billing regimen" that became more valuable the longer petitioner remained incarcerated; (4) petitioner was not advised that he could have objected to the recommendation of the Magistrate Judge before it was accepted, and petitioner did not file a waiver of the objection period or know that he had the right to withdraw the plea.

Petitioner also argues that he had a valid statute of limitations defense as to Count Two, a valid challenge to the sufficiency of Count Three of the Indictment because an essential element of the offense was absent, and a valid suppression

challenge to custodial interrogation in an Embassy and to the seizure of his personal items stored at his mother's home.

### 1. Plea Colloquy

On May 10, 2012, petitioner appeared before the Magistrate Judge to enter a plea of guilty as to Counts Two and Three of the Indictment pursuant to a Plea Agreement. The first two grounds raised by petitioner address what counsel told petitioner, or failed to tell petitioner, with regard to the possible sentence petitioner was facing. Although now couched in terms of ineffective assistance, the argument that petitioner's plea was unknowing or not voluntary, was rejected by the Eleventh Circuit. United States v. Bokerman, 543 F. App'x 974, 975 (11th Cir. 2013).

During the change of plea hearing, petitioner responded that he understood the charges, he had sufficient time and the opportunity to review the charges with counsel, and that he was satisfied with the services of counsel. (Cr. Doc. #79, pp. 4-5.) Petitioner responded "No, they have not" when asked: "Has anyone threatened you, forced you, or in any way promised you anything in order to get you to enter pleas of guilty to those two counts?" (Id., p. 5.) The Magistrate Judge asked petitioner if he understood that the Court was not bound by any of the recommendations as to the sentence contained in the plea agreement, to which petitioner responded "That's true, yes." (Id., p. 7.)

THE COURT: Does the plea agreement contain all of the promises that you made to the Government and all of the promises they made to you in writing?

DEFENDANT: Yes.

THE COURT: Is either counsel aware of any promises or representations that were made that are not reduced to writing in the plea agreement?

MS. CALDARONE: No, Your Honor.

THE COURT: Mr. Murray, any promises or representations that were made that are not reduced to writing?

MR. MURRAY: No, no, Your Honor.

. . . .

Now, in regard to the plea agreement, we've discussed that quite a bit, but the Government has tendered, obviously, an offer to the defendant. And Mr. Murray, you've conveyed all offers and all of the parameters of those offers to the defendant; is that correct?

MR. MURRAY: That is correct, Your Honor.

THE COURT: And that's what is then memorialized in the plea agreement?

MR. MURRAY: Correct.

(Id., pp. 7, 18.) Petitioner agreed that the plea agreement contained all promises made, and counsel confirmed that he did not make any oral promises or representations. To require the Court to "sufficiently "thresh out" the possibility that his plea was coerced would be to elevate form over substance, contrary to the spirit of Rule 11." United States v. Stitzer, 785 F.2d 1506, 1513

(11th Cir. 1986). Petitioner makes the argument that he was not properly advised, or was ill-advised as to the sentence he was facing, but provides no specific facts or an affidavit regarding what counsel allegedly told him *prior* to the change of plea. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). As discussed below, petitioner's own statements on the record negate any such argument.

## 2. Sentencing Range

As part of the colloquy, the Magistrate Judge explained the possible penalties, including the applicable minimum mandatory terms of imprisonment associated with both Counts Two and Three:

> THE COURT: In regard to the penalties for those charges, Count 2 carries a minimum mandatory sentence of 15 to 40 years of imprisonment, a fine of up to $250,000, a term of supervised release of not less than five years up to life, and a special assessment of $100 that's due at the time of sentencing.
>
> Count 3 carries a minimum mandatory sentence of 10 to 20 years of imprisonment, a fine of up to $250,000, a term of supervised release of not less than five years up to life, and a special assessment of $100 due at the time of sentencing.
>
> Do you understand the possible penalties should you enter a plea of guilty to the charges?
>
> DEFENDANT: Yes, yes, I do.

(Id., p. 8.)  The Magistrate Judge also addressed any predictions that were made by counsel:

> THE COURT: Are you aware that the sentencing guidelines are advisory to the Court?
>
> DEFENDANT: Yes.
>
> THE COURT: Do you understand that your criminal history would be an important factor in applying the sentencing guidelines?
>
> DEFENDANT: Yes.
>
> THE COURT: At this time, the Court cannot determine what guideline range applies to your case but the Court does have the authority, under some certain –
>
> At this time, the Court can't determine the guideline range that applies to you because a presentence report has not yet been completed. Do you understand that?
>
> DEFENDANT: Yes, Your Honor.
>
> . . . .
>
> THE COURT: Now, if he has given you a prediction of where he believes you'll fall on the guidelines, do you understand that if he's not correct, you're not going to be able to withdraw your plea of guilty?
>
> (Discussion off record)
>
> DEFENDANT: Yes.
>
> THE COURT: Do you have any questions as to that?
>
> DEFENDANT: I don't believe so.
>
> THE COURT: Okay. Basically, the only thing I'm asking you there is in your discussions, your attorney may have given you some idea of where he thought you'd fall on the guidelines but because the presentence report has not yet

been completed, he doesn't know exactly where you'd fall. So I wanted to make sure that you knew you weren't going to be able to withdraw your plea even if his prediction was not correct, and you understand that; correct?

(Discussion off record)

MR. MURRAY: Your Honor, and I wish to remind my client in court that I also informed him that the judge can depart upward or downward, except for the minimum mandatory, and so there's no guarantee what the judge is going to do.

THE COURT: Okay. And do you recall that, Mr. Bokerman, that that is your understanding?

DEFENDANT: Yes, I believe so.

(<u>Id.</u>, pp. 9-11.) The Plea Agreement itself contains a provision regarding the nonbinding nature of sentencing recommendations:

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.

(Cr. Doc. #45, pp. 9-10.)

"There is a strong presumption that the statements made during the colloquy are true." <u>United States v. Medlock</u>, 12 F.3d 185, 187 (11th Cir. 1994) (citing <u>United States v. Gonzalez-Mercado</u>, 808 F.2d 796, 800 n.8 (11th Cir. 1987)). Petitioner was made aware of the minimum mandatory terms of imprisonment, and that any predictions by counsel were not binding on the sentencing Court because the Presentence Report had not yet been created. <u>See also United States v. Bokerman</u>, 543 F. App'x 974, 976 (11th Cir. 2013) (finding nothing in the record to indicate that, but for the failure to mention that U.S. Sentencing Guidelines Manual § 2G2.2, petitioner would not have entered his guilty plea).

Neither Count Two nor Count Three carried a mandatory life sentence as to imprisonment[3], and therefore "service of a life sentence" was not "a virtual certainty" by any means.

> Unless there is evidence in the record which indicates that the attorney created a false impression of the binding nature of the plea agreement, a court must reasonably rely on the Rule 11 colloquy and the signed plea agreement for the proposition that the defendant understood the agreement was non-binding. Certainly, we realize that a defendant would ask his attorney how he believed the judge was likely to rule. A defendant's *unexpressed reliance* on his attorney's speculation cannot overcome his direct responses that the agreement was non-binding.

---

[3] Only the term of supervised release for each count was up to life.

United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.10 (11th Cir. 1987) (emphasis added).  The Court clearly asked petitioner if he understood that his criminal history would be an important factor in applying the sentencing guidelines, and petitioner responded "Yes."  (Cr. Doc. #79, p. 9.)  Petitioner insisted on an opinion as to his maximum sentence, which issue was brought to the Court's attention:

> MR. MURRAY: Your Honor, my client would like to have your opinion as to his maximum sentence. I've gone over this ad nauseam, but he would like to ask you what the worst maximum sentence is that he's facing.
>
> THE COURT: Okay. Mr. Bokerman, obviously I -- without a presentence report, I can't tell you exactly where the Court would sentence you and because I would not be the sentencing judge, I could certainly not tell you.
>
> I can tell you what the minimum and maximum penalties are, or in this case, the maximum penalties with minimum mandatories, but I cannot give you any better idea than that of where you would fall, as far as what the District Court would do.
>
> . . . .
>
> That is the best at this time that I can do in telling you what the minimum or maximum penalties would be.  It would be up to the sentencing judge, after referring to the presentence report once that's been completed, in order to tell you what that possible sentence or what that sentence would be.

(Doc. #79, pp. 25-27.)  The fact is that neither the non-sentencing judge, nor counsel for petitioner, or even the government had a presentence report such that the criminal history category could

- 15 -

be accurately determined.  Additionally, Fed. R. Crim. P. 11 does not require the Court to specify which guidelines will be important or prove significant.  <u>United States v. Bozza</u>, 132 F.3d 659, 661-62 (11th Cir. 1998).  The Court finds no merit to the first two arguments regarding what counsel may or may not have stated to petitioner.

### 3. Waiver of Appeal

Petitioner's written Plea Agreement (Doc. #45) was initialed on each page by petitioner, and signed by petitioner and his attorney, and states that it is the entire agreement between petitioner and the government, and that "no other promises, agreements, or representations exist or have been made" to petitioner or his attorney.  (Doc. #45, p. 15.)  The Plea Agreement contains a waiver of appeal and collateral challenge provision, which states in pertinent part:

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence **or to challenge it collaterally on any ground**, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guideline range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the

> government exercises its right to appeal the
> sentence imposed, as authorized by Title 18,
> United States Code, Section 3742(b), then the
> defendant is released from his waiver and may
> appeal the sentence as authorized by Title 18,
> United States Code, Section 3742(a).

(Cr. Doc. #45, p. 10-11) (emphasis in bold added).  A waiver

provision in a plea agreement is valid if made knowingly and

voluntarily.  United States v. Weaver, 275 F.3d 1320, 1333 (11th

Cir. 2001) (citing United States v. Bushert, 997 F.2d 1343, 1350-

51 (11th Cir. 1993)).  To establish that the waiver was made

knowingly and voluntarily, the government must show that either

(1) the district court specifically questioned the defendant about

the waiver during the plea colloquy, or (2) the record makes clear

that the defendant otherwise understood the full significance of

the waiver.  United States v. Johnson, 541 F.3d 1064, 1066 (11th

Cir. 2008).

During the colloquy, the Magistrate Judge reviewed the waiver

provision of the plea agreement:

> THE COURT: In the plea agreement, there is a
> section on Page 10 that talks about your
> waiver of your right to appeal and your right
> to collaterally challenge the sentence, and I
> want to make sure that you understand that
> you're agreeing that the Court does have the
> jurisdiction and the authority to impose any
> sentence up to the statutory maximum and that
> you are expressly waiving the right to appeal
> your sentence or to challenge it collaterally
> on any ground, including the ground that the
> Court erred in determining the applicable
> guideline range pursuant to the sentencing
> guidelines, except the ground that the

> sentence exceeds your applicable guideline
> range as determined by the Court, the ground
> that the sentence exceeds the statutory
> maximum penalties, or the ground that the
> sentence violates the Eighth Amendment to the
> Constitution. Do you understand that?
>
> (Discussion off record)
>
> DEFENDANT: Yes, I understand.

(Doc. #79, pp. 11-12.) The Eleventh Circuit noted this unambiguous acknowledgement that petitioner understood the waiver, and dismissed that portion of his direct appeal. <u>United States v. Bokerman</u>, 543 F. App'x 974, 977 (11th Cir. 2013). The Magistrate Judge went on to inform petitioner that he had the right to continue with a plea of <u>not</u> guilty:

> THE COURT: Do you understand the possible
> penalties which apply if you enter a plea of
> guilty, Mr. Bokerman?
>
> (Discussion off record)
>
> DEFENDANT: Yes, Your Honor.
>
> THE COURT: Now, you do have a right to continue
> in a plea of not guilty if that's what you'd
> like to do, but you also have a right to enter
> your plea of guilty here today.
>
> You do have the right to effective assistance
> of counsel at every stage of the proceedings
> and Mr. Murray would continue to represent you
> throughout your case, no matter how you chose
> to go forward.

(Cr. Doc. #79, p. 15.) The Court finds no deficient assistance by counsel based on the clear statements by petitioner that he

understood the waiver, and the consequences.  The motion will be denied on this basis.

### 4. Financial Conflict

Petitioner argues that the counsel advised him to enter a plea of guilty without obtaining any concessions from the government, and while having assumed control of petitioner's assets.  Petitioner argues that his attorney should have disclosed the conflict of interest, and should have suggested review by independent counsel.

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."  <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348 (1980). Based on petitioner's nontraditional argument of a financial conflict, petitioner "must establish that an actual financial conflict existed by showing that his counsel actively represented his own financial interest . . . rather than showing the possibility of an actual financial conflict."  <u>Caderno v. United States</u>, 256 F.3d 1213, 1218 (11th Cir. 2001).

The mere speculation by petitioner that billing or holding authority over an account was a conflict, without support, is insufficient to demonstrate a constitutional violation.  <u>Caderno</u> at 1219.  The motion will be denied on this basis.

### 5. Objection to Recommendation

Petitioner argues that he did not know that he could object to the Report and Recommendation Concerning Plea of Guilty, or that he had the right to withdraw the plea of guilty. Petitioner argues that counsel permitted the Magistrate Judge to erroneously assert that he had waived the right to object[4], when no such waiver had been filed or occurred. Petitioner argues that he was never advised by anyone that he had a right to object, including "based on his counsel's false advice." (Cv. Doc. #1, p. 15.) Petitioner does not state what objections he would have raised, or if he would not have entered the plea of guilty but for the failure to advise as to the objection period.

The failure to serve and file specific written objections to a magistrate judge's recommendations will waive a party's right to review. Fed. R. Crim. P. 59(b)(2). This waiver "constitutes an intentional relinquishment or abandonment of a known right." United States v. Wilcox, 324 F. App'x 805, 808 (11th Cir. 2009). Even assuming a defendant is prevented from timely filing objections, any such error is deemed harmless if no "factual dispute" is presented, and the Court can assess the merits of the motion on its face. Rutledge v. Wainwright, 625 F.2d 1200, 1206

---

4 The Report and Recommendation stated: "The parties have waived the fourteen day objection period to this Report and Recommendation." (Cr. Doc. #50.)

(5th Cir. 1980)[5]; <u>Braxton v. Estelle</u>, 641 F.2d 392, 397 (5th Cir. 1981). To the extent that petitioner would challenge any legal conclusions made, this would be reviewed *de novo* regardless of the filing of an objection. <u>Lawston v. United States</u>, 605 F. App'x 785, 788 (11th Cir.), <u>cert. denied,</u> 135 S. Ct. 2912 (2015).

In this case, the Report and Recommendation states that the parties waived the objection period, and the Acceptance of Guilty Plea and Adjudication of Guilt (Cr. Doc. #51) reiterates that the parties waived the objection period. Since petitioner argues that the waiver was never made and the statement is incorrect, for purposes of the Motion, the Court will assume that petitioner did not waive the objection period.

As detailed above, the Magistrate Judge provided all the information required under Rule 11, and even pointed out that petitioner could still plead <u>not</u> guilty and proceed to trial. (Cr. Doc. #79, p. 15.) A defendant may withdraw a plea of guilty:

> **(1)** before the court accepts the plea, for any reason or no reason; or
>
> **(2)** after the court accepts the plea, but before it imposes sentence if:
>
> **(A)** the court rejects a plea agreement under Rule 11(c)(5); or

---

5 In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**(B)** the defendant can show a fair and just reason for requesting the withdrawal.

Fed. R. Crim. P. 11(d). "[T]here is no absolute right to withdraw a guilty plea prior to imposition of a sentence. The decision to allow withdrawal is left to the sound discretion of the trial court." United States v. Buckles, 843 F.2d 469, 471 (11th Cir. 1988 (collecting cases). "After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack." Fed. R. Crim. P. 11(e).

Petitioner argues that he would have withdrawn his plea and proceeded with trial if counsel had properly advised him of the applicable guideline factors calling for a life sentence, and petitioner would have advised the Court of his conflict of interest concerns and the lack of consultation related to the plea, sentencing, and his early release, as well as the misunderstanding of relevant law and his rights. For petitioner to establish 'a fair and just reason' to withdraw his plea of guilty, the Court considers the totality of the circumstances, "including: (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw the plea." United States v. Gittens, No. 16-14572, 2017 WL 2859509, at *1

(11th Cir. July 5, 2017) (citing <u>United States v. Buckles</u>, 843 F.2d 469, 471-72 (11th Cir. 1988)).

As of the date of sentencing, petitioner had not sought to withdraw his plea, even if he did lose the opportunity to timely object to the recommendation. Petitioner also did not raise the issue on direct appeal. Petitioner was represented by counsel throughout the proceedings, including his direct appeal, and the Court has determined that the guilty plea was knowing and voluntary. The government would clearly be prejudiced based on the passage of time, and the fact that the unidentified minors would be even more difficult to identify. The motion contains conjecture and allegations, but no verified factual statements despite petitioner's averment that the government failed to rebut the "sworn factual allegations in the § 2255." (Cv. Doc. #7, ¶ 1.)

Petitioner's reliance on <u>Gomez-Diaz v. United States</u>, 433 F.3d 788 (11th Cir. 2005) is also misplaced. There is no indication that counsel disregarded instructions from his client to appeal, and petitioner did in fact pursue a direct appeal. Moreover, regardless of what conversations took place between counsel and petitioner *before* the change of plea hearing, petitioner stated on the record that he understood the consequences of the guilty plea including that the sentence could not be predicted. Because petitioner's allegations are "affirmatively

contradicted by the record", by his own responses at the change of plea hearing, no hearing is required and no relief is warranted based on "unsupported generalizations." <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989). The motion is denied as to this argument.

### 6. Substantive Arguments

Petitioner argues that counsel failed to adequately investigate and explain to him the right to seek suppression of both statements related to his foreign arrest, and property he stored at his mother's home. Petitioner also argues that counsel failed to advise petitioner that he had a valid statute of limitations defense as to Count Two because the transportation occurred years before and outside the statute of limitations. Further, petitioner argues that counsel failed to advise petitioner that Count Three of the Indictment was deficient because it failed to allege the use of materials transported.

Petitioner entered a plea of guilty pursuant to a Plea Agreement containing an appeal waiver with three limited exceptions:

> (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution.

(Cr. Doc. #45, p. 10.)   None of the substantive arguments fall within the parameters of the exceptions, and the appeal waiver is enforceable when a defendant is specifically questioned during the plea colloquy about the waiver, which is the case here, and defendant confirms is understanding of it significance.   United States v. Bokerman, 543 F. App'x 974, 976 (11th Cir. 2013). Further, petitioner was also specifically advised as to the filing of a motion to suppress during the colloquy:

> THE COURT: All right. In that regard, Mr. Bokerman, let me ask you that. You understand that you do have a right -- and I do know that there was a motion to suppress filed, and the Court could hear a motion to suppress at -- not at this time, but it was scheduled to be heard. You understand that by entering this plea, you're giving up your right to bring up any issues in the motion to suppress or any issues of a motion to suppress?
>
> DEFENDANT: Yes.
>
> THE COURT: All right. And I want to make sure that that's what you want to do. Is that what you want to do in entering a plea today?
>
> (Discussion off record)
>
> DEFENDANT: Yes.

(Cr. Doc. #79, p. 21.)   The issues were not raised on direct appeal, and the issues will be dismissed pursuant to the appeal waiver.

### B. Ground Two: Sentencing

Petitioner argues that counsel provided ineffective assistance at sentencing by failing to: (1) call and present

"available witnesses" that were the victims in the photographs, or obtain their affidavits since counsel had contact with the family and they were willing to assist; (2) present argument regarding the effect and constitutional implications of the lengthy sentence; (3) object to the use of foreign conduct to enhance the sentencing range, which was not adequately investigated; (4) seek a downward variance based both on petitioner's substantial assistance with admissions by a sexual predator, and the lesser harm of the images that did not involve sexual relations and because there was no distribution; and (5) object to the criminal history enhancement that was barred under the guidelines.

### 1. Witnesses

Petitioner argues counsel failed to investigate and present witnesses concerning the identity and ages, and voluntary actions of persons depicted in the images, even though counsel had telephone contact with the family who were willing to assist. The Court notes that the government was unable to identify the minor victims during the investigation despite efforts by agents to locate such information. (Cv. Doc. #5, p. 18.) The government also states that petitioner did not cooperate with efforts to identify the minors and any adults who facilitated access to minors for tourists. (Cr. Doc. #75, pp. 79, 102.) Petitioner argues that the ages of the minor victims could have been established, or

at least disputed, and victim witnesses could have testified that they were never abused.

At sentencing, counsel referred to petitioner's friend Ricardo, and stated that the minors were Ricardo's children who came over with him to play and swim, and that the children were under Ricardo's control. (Cr. Doc. #75, pp. 57, 72.) Counsel successfully argued that the two level increase for custody, care, or supervising control of the minor should be eliminated because the children were always with Ricardo and under his direction and control. (Id., p. 76.) In the factual basis of the Plea Agreement, petitioner stated that there were 26 Polaroid photographs, 23 of which depicted minors (some under the age of 12) engaged in sexually explicit conduct. (Cr. Doc. #45, p. 14.) Counsel argued that petitioner had been giving estimates, and that the Court should instead rely on the expert to determine age. The objection was sustained and the Presentence Report was changed from 20 separate children to only 10 separate children involved in the Polaroid pictures. Making a conservative estimate based on the expert testimony, the Court used a total of 13 victims instead of 41 for the number of victims in the video. (Cr. Doc. #75, pp. 66-67.) The changes had no impact on the application of the guidelines. (Id., p. 67.)

Petitioner's Base Offense Level was a 32. Picture 1A depicts four boys, one of which appeared to be 10 years old (V1) who was

involved in the commission of a sexual act while looking at the camera. Based on this specific picture, four levels were added for V1's age and an additional two levels were added for the lewd and lascivious nature of the photograph. (Presentence Report, ¶¶ 17, 39.) Petitioner's expert testified that she could not state that V1 was more likely than not actually under the age of 18 based on his maturity rating. (Id., p. 22.) Each subsequent picture was reviewed and the six level increase was applied if the minor appeared to have not attained the age of 12 and if the commission of a sexual act or sexual contact was depicted.[6] The specific offense characteristics resulted in an overall Adjusted Offense Level of 38. An increase of five levels was added based on the number of units, pursuant to U.S. Sentencing Guidelines Manual § 3D1.4, for a Combined Adjusted Offense Level of 43, before the acceptance of responsibility and before consideration of petitioner's criminal history.

"Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (citation omitted). Petitioner's "mere speculation that missing witnesses would have been helpful is

---

[6] V3 in picture 1A was found to be between the age of 12 and 16, and therefore only warranted a two level increase.

insufficient," e.g., Streeter v. United States, 335 F. App'x 859, 864 (11th Cir. 2009), to support a finding that counsel's failure to call Ricardo or victims equates to ineffective assistance, Chandler v. United States, 218 F.3d 1305, 1319 (11th Cir. 2000) ("Considering the realities of the courtroom, more is not always better. Stacking defenses can hurt a case."). Even assuming that Ricardo could travel and would have travelled to testify as to his children's ages, it is unclear that it would have made an impact on the guideline calculations, or that the testimony would have been credible. Petitioner himself stated "[i]t is very difficult to determine the age of members of the family because very few people have birth certificates in the Dominican Republic. They are born by midwives and so forth. And for someone to achieve an ID is very difficult, because a lot of them do not have birth certificates, and you sort of have to guess as what their age is and what their actual birth date is." (Doc. #75, p. 96.)

There is no indication that the decision not to present Ricardo was deficient performance by counsel. The decision to instead rely on a credible expert to testify regarding the age of the victims will not be second-guessed based on petitioner's post-sentencing speculation. The motion will be denied as to this issue.

## 2. Issues for Reduction of Sentence

Petitioner argues that counsel failed to raise grounds for a variance such as petitioner's substantial assistance, the nature of the images as outside the heartland, the absence of any distribution, and the lesser degree of harm associated with the photographs.  Petitioner also argues that counsel failed to object to the use of foreign conduct to enhance petitioner's sentence based on a cross-reference under U.S. Sentencing Guidelines §2G2.2(c) when there are no police reports of such foreign conduct.

In the Plea Agreement, the parties agreed and jointly recommended to not depart downward from the applicable sentencing guideline range because it was agreed that no such departure would be appropriate.  (Cr. Doc. #45, p. 4.)  The government also agreed not to oppose a two-level adjustment for acceptance of responsibility, if he agreed to a full debriefing.  (Id., pp. 3-4.)  Petitioner failed to provide the information requested to help identify any adults involved and the minor victims, despite knowing the family in question for 10 years, and therefore the government did not agree to an additional level for acceptance even though the plea was timely made.  (Cr. Doc. #75, pp. 79, 82, 84, 102.)  Counsel argued that petitioner cooperated, and offered to testify against an individual who had been having sexual intercourse with his seven year old daughter, and who pled guilty as a result of the potential testimony.  (Id., p. 78.)  The Court

sustained the objection to the lack of acceptance and granted a three-level adjustment for acceptance. (Id., p. 84.)

Contrary to petitioner's current position, counsel also raised the nature and type of photographs as a mitigating factor. Counsel further addressed the lack of distribution and reiterated petitioner's cooperation:

> We have . . . you know, in 40 years of doing this, this is my first case of doing this. And I -- I'm choking on the words. But these photographs are not of children being forced into sexual intercourse, or into fellatio, or into horrible things that happen with child pornography. These are people that are holding their private parts, their male member, and that's it.
>
> . . .
>
> I have a client who I believe is 66 years old. You can give him a life sentence for these photographs, which basically show people holding their private parts, males holding their private parts, and . . . . I think that there has to be -- the whole reason they took it out of the sentencing guidelines is they're too onerous. The guidelines are too onerous.
>
> . . .
>
> And the fact of the matter is, he has tried to cooperate from the very beginning. And we appreciate the three-level downward departure, but the fact of the matter is, these are photographs. These are photographs taken years ago. These are photographs that . . . that most people would look at and say they're nothing.
>
> . . .
>
> You know, again, there's no egregious contact going on when you have individuals touching

> themselves. And we have a limited number of
> photographs, we have a limited number of
> victims. We don't need to sledgehammer the ant
> here. We need to do what is appropriate.

(Id., pp. 53-54, 91, 103.)  The Court noted that petitioner was a registered sex offender, had priors for similar conduct, and that he directed the conduct of the children in the videos.  The Court rejected the view that the pictures were not serious when sentencing petitioner.  (Id., p. 105.)  There is no basis on the record that would have supported a substantial assistance finding for purposes of a downward variance.  The Court finds no deficient performance of counsel.

Under U.S. Sentencing Guidelines Manual §2G2.2(c), if the offense involved "causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct", §2G2.1 is applied to enhance the Base Offense Level to 32.  The government and petitioner agreed that the Base Offense Level was a 32 in the Plea Agreement based on the cross-reference.  (Cr. Doc. #45, p. 3.)  The factual basis in the Plea Agreement established that petitioner travelled several times to the Dominican Republic, and at the time of his arrest petitioner admitted to taking nude photographs of children involved in sexually explicit conduct and transporting the photographs to the United States to keep as his own.  No documents from the Dominican

Republic were required to establish the transportation based on admissions in petitioner's Plea Agreement, and therefore there was no foreign conduct at issue. This issue is rejected.

Petitioner argues that the 3 criminal history points should not have been counted because 15 years had passed since his release from custody. This argument is rejected. Under U.S. Sentencing Guidelines Manual § 4A1.1(a) n.1, a sentence imposed more than 15 years prior to the commencement of the current offense is not counted unless the incarceration extended into the 15 year period, and in this case it did. Petitioner was found guilty and sentenced on January 19, 1993 to a term of 8 and one-half years of prison. Although petitioner was released on "shock probation" on April 19, 1993, the term of imprisonment did not expire until December 19, 1998, and the Indictment alleges that the offenses were committed from an unknown date through on or about September 8, 2011, within the 15 year period.

### 3. Length of Sentence

Petitioner argues that counsel failed to present constitutional arguments against a life sentence, and that counsel should have presented evidence that petitioner posed no threat upon release given the absence of any victim complaint. Petitioner also argues that the criminal history was overrepresented because petitioner had committed no federal offense within 15 years of his 1993 release from custody.

On direct appeal, the Eleventh Circuit dismissed petitioner's challenge to his sentence in light of the sentence-appeal waiver, and otherwise found no Eight Amendment violation. <u>United States v. Bokerman</u>, 543 F. App'x 974, 977 (11th Cir. 2013). Petitioner scored 3 points for his 1993 conviction for gross sexual imposition in Ohio giving him a Criminal History Category of II. Petitioner was ultimately sentenced to the low-end of the applicable guideline range of 324 to 405 months of imprisonment. Count Two carried a statutory minimum mandatory of 15 years to 40 years of imprisonment, and Count Three carried a minimum mandatory of 10 years to 20 years of imprisonment. "Generally, when a sentence is within the limits imposed by statute, it is neither excessive nor cruel. <u>United States v. Flores</u>, 572 F.3d 1254, 1268 (11th Cir. 2009) (citing <u>United States v. Moriarty</u>, 429 F.3d 1012, 1024 (11th Cir. 2005)).

The record reflects that the Court considered the factors under 18 U.S.C. § 3553(a), whether discussed individually or not, and no procedural error is presented. (Cr. Doc. #75, p. 104.) If there is no procedural error, the substantive reasonableness of the sentence is reviewed for abuse of discretion and the burden is on petitioner. <u>United States v. Flores</u>, 572 F.3d 1254, 1270 (11th Cir. 2009). The Court specifically considered the threat posed by petitioner, that he was a registered sex offender, and the fact that the crime involved children that were directed to engage in

sexually explicit conduct.  (Cr. Doc. #75, p. 105.)  To the extent that this issue is available on collateral review, the Court finds that there is nothing in the record to indicate that the sentence imposed was grossly disproportionate.  United States v. Farley, 607 F.3d 1294, 1345 (11th Cir. 2010) (collecting cases involving the sexual abuse of children).  The motion is denied on this basis.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.  Petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #90) is **DENIED.**

2.  The Clerk of the Court shall enter judgment accordingly and close the civil file.  The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

**IT IS FURTHER ORDERED:**

**A CERTIFICATE OF APPEALABILITY (COA) AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE DENIED.**  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 183 (2009).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003)(citations omitted).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** at Fort Myers, Florida, this ___10th___ day of October, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record
AUSA